## STATE OF OREGON,
*Appellant,*

*v.*

## DENNIS RICHARD BROOKS,
*Respondent.*

### (80-4-225; A26601)

668 P2d 466

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

John Daugirda, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The state appeals pretrial suppression and dismissal orders. We reverse and remand for trial.

Defendant was charged with murder and felony murder for causing the death of Kitty Coy in 1979. He was tried and convicted. We reversed that conviction on the basis of inadmissible "other crimes" evidence. *State v. Brooks,* 57 Or App 98, 643 P2d 1324, *rev den* 293 Or 373 (1982).

Defendant's accomplice, Hazeem, testified at the first trial pursuant to a plea agreement with the state. We summarized his testimony as follows:

> "* * * Accomplice Hazeem testified that he and defendant took Coy to the High Rocks area in Clackamas County where Hazeem thumbcuffed her to a tree, and defendant shot her three or four times with a .22 caliber pistol. * * *" 57 Or App at 106.

Hazeem stated his intent to claim his Fifth Amendment privilege if called to testify at defendant's retrial. When the prosecutor asked if his testimony at the retrial would be consistent with that given at the first trial, Hazeem replied:

> "Well, if I answered that, that I would, you know, could be saying that I was lying one time other than that. I don't see how I could do that without incriminating myself. I can't answer that question."

He further stated that, if he was ordered to testify at the retrial, he would testify truthfully but that he could not testify without incriminating himself, so he would assert his Fifth Amendment privilege. He gave two bases for his Fifth Amendment claim: the possibility of perjury and the possibility of a violation of the plea agreement at the first trial that required him to testify truthfully and consistently with the statement he made to detectives.

The trial court sustained Hazeem's Fifth Amendment claim. Defendant then moved to exclude Hazeem's prior testimony at the retrial. The court allowed that motion. The state gave oral notice of appeal and moved for a continuance. The court denied a continuance and allowed defendant's motion to dismiss the indictment.

■ Hazeem's prior testimony is hearsay. The state contends that it is nonetheless admissible. OEC 804(3)(a).[1] Defendant contends that admission of the evidence would violate his confrontation right under the state and federal Constitutions. An exception to the Confrontation Clause is recognized under which prior recorded testimony which was subject to cross-examination may be received when a witness is unavailable. *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980). The trial court found that Hazeem was unavailable. However, the court further found that his prior testimony was inadmissible, because Hazeem was an "untrustworthy witness," based on his indications that, if forced to testify, his testimony on retrial would be different than at the first trial.

Defendant first contends that Hazeem's unavailability was the fault of the state. He argues that, by drafting a plea agreement that only required Hazeem to testify at the first trial, the state was "responsible for the necessity" of the use of the former testimony on retrial. *State v. Herrera,* 286 Or 349, 358, 594 P2d 823 (1979). He argues further that the state could have granted Hazeem immunity and thereby compelled his testimony.

In *State v. Herrera, supra,* the prosecutor, through use of a promise of immunity, obtained favorable preliminary hearing testimony from an accomplice. The day before trial, the accomplice was charged with felony murder in violation of the plea agreement. He invoked his Fifth Amendment privilege and refused to testify. The prosecutor sought to introduce the preliminary hearing testimony. The Supreme court held:

"* * * In order to use that testimony on the basis of unavailability of the witness at trial, at the minimum the state must show good cause for breaking its promise or why it does not wish to avail itself of statutes which can compel his testimony at the trial.

"The prosecutor has discretion in charging persons for crimes. He can, therefore, execute immunity agreements such

---

[1] OEC 804(3)(a) provides:

"(a) Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

as the one in this case. He also has the power, by statute, to ask the trial court to compel a witness to testify and thereby be granted immunity from prosecution. Either of these powers will eliminate a witness' privilege not to testify. If the state uses the existence of its power to obtain for itself favorable preliminary hearing testimony, it must explain why it does not wish to further use its powers to produce testimony at trial in order to satisfy the defendant's right to confrontation. Without requiring such an explanation from the prosecutor, he is in a position of preserving and using favorable preliminary hearing testimony from a potentially uncredible witness by charging or threatening to charge the witness with a crime before trial." 286 Or at 356. (Footnotes omitted.)

■ Unlike *Herrera,* this case does not involve prosecutorial manipulation or revocation of an immunity agreement. Both parties fulfilled their obligations under the plea agreement. A different plea agreement might have considered the possibility of a retrial; however, there is no evidence of manipulation. A prosecutor is not required to presume that a witness will invoke the Fifth Amendment at a later trial in order to avoid a possible perjury charge.

*Herrera* was decided before *Ohio v. Roberts, supra,* before the enactment of OEC 804 and before *State v. Farber,* 295 Or 199, 666 P2d 821 (1983). *Farber* involved the admissibility of prior statements of a coconspirator who had asserted his Fifth Amendment right. In *Farber,* the Supreme Court explained that "[u]nder our case law, an actual assertion of this privilege will make the declarant unavailable," 295 Or at 209, and noted that OEC 804 specifically recognizes this possibility:

>"(1) 'Unavailability as a witness' includes situations in which the declarant:
>
>"(a) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of a statement."

Although the court noted that some authorities suggest that the state should be required to immunize a witness who asserts a privilege against self-incrimination, thus forcing him to testify,[2] it held that the state was not responsible for the witness'

---

[2] *See Dutton v. Evans,* 400 US 74, 101 n 2, 91 S Ct 210, 27 L Ed 2d 213 (1970) (Marshall, J., dissenting); *United States v. Yates,* 524 F2d 1282, 1286 (DC Cir 1975).

unavailability. *State v. Farber, supra,* 295 Or at 209. Similarly, we conclude here that the state was not responsible for Hazeem's unavailability. Because he has asserted his Fifth Amendment privilege, he was unavailable. OEC 804; *Ohio v. Roberts, supra.*

■ Once a finding has been made that the witness is unavailable, a finding must also be made whether the evidence possesses "adequate 'indicia of reliability' " before it can be admitted. Reliability can be inferred if the evidence falls within a firmly rooted hearsay exception. *Ohio v. Roberts, supra,* 448 US at 66. The evidence here falls within such an exception.

OEC 804(3)(a) provides:

"(3)　The following are not excluded by ORS 40.455 if the declarant is unavailable as a witness:

"(a)　Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

OEC 804(3)(a) stresses the inherent reliability of prior recorded testimony: "Former testimony [unlike other hearsay exceptions] does not rely upon a set of circumstances to substitute for oath and cross-examination: oath and opportunity to cross-examine were present when the former testimony was given." Kirkpatrick, *Oregon Evidence* 415 (1982). Further:

"* * * If the party against whom now offered is the one against whom the testimony was offered previously, it is generally not unfair to require the party to accept the result of the party's cross-examination or failure to cross-examine." Official legislative commentary to OEC 804, Kirkpatrick, *Oregon Evidence* 415 (1982).

■ Defendant had the same interest at stake in the first trial as in the second, and he vigorously cross-examined Hazeem. The testimony was given under oath. Defendant had

the opportunity to cross-examine Hazeem fully at the first trial. We conclude that the trial court erred in suppressing the evidence. Dismissal of the indictment was also error. *State v. Hoare,* 20 Or App 439, 445, 532 P2d 240 (1975).

Reversed and remanded for trial.